Filed 8/13/25  Conservatorship of R.J. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person and Estate of R.J. | |
| COLLEEN PHILLEY, as Conservator, etc., | F088679 |
| Plaintiff and Respondent, | (Super. Ct. No. MI003971-04) |
| v. | |
| R.J., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Kern County.  Stephanie R. Childers, Judge.

Rudolph Kraft III, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

After a jury trial, R.J. was placed under conservatorship of the Kern County Public Conservator (public conservator) for some months, from September 3, 2024, until February 18, 2025.  The court's post-trial order placing R.J. under conservatorship included a provision authorizing the public conservator to collect periodic compensation

payments from R.J.'s estate, under certain conditions and subject to court approval at subsequent accounting proceedings. On appeal, R.J. challenges, for the first time, this aspect of the court's order. We conclude R.J.'s challenges are forfeited on account of his failure to raise them in the trial court. Accordingly, we affirm the judgment.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On April 15, 2024, the Kern County Public Conservator filed, in the Kern County Superior Court, a petition for appointment of temporary conservator and conservator of the person and the estate (petition) as to R.J., a 37-year-old man.

The petition stated: "The appointment of the Conservator of the Person and Estate is required because the proposed Conservatee is a gravely disabled person as defined in Welfare and Institutions Code Section 5008(h)(1)(A) and is unwilling to accept or incapable of accepting treatment voluntarily." The petition added: "Additional information supporting the request for appointment of a Conservator will be more fully set forth in the Conservatorship Investigation Report to be filed with this court prior to the hearing." The petition further provided: "The character and value of the property of the proposed Conservatee is unknown to Petitioner and Petitioner will file an Inventory when the same has been ascertained."

The petition noted that "it is in the best interest of the proposed Conservatee [that] [t]he Conservator … have the power and authority to conserve and protect the property of the Conservatee from loss or injury" and that "[t]he Conservator … have the right to require the Conservatee to receive treatment related specifically to remedying or preventing the recurrence of Conservatee being gravely disabled." The petition added: "It is in the best interest of the proposed Conservatee that a Temporary Conservator be appointed with the power to consent to psychiatric treatment and to detain the proposed Conservatee in a facility providing intensive treatment pending the determination of this Conservatorship proceeding."

In addition, the petition stated: "[I]t would be in the best interests of the proposed Conservatee, and therefore Petitioner requests authority to make periodic payments from the conservatorship estate for compensation for services of the Public Conservator [p]ursuant to Probate Code section 2643, based on the current Public Conservator/Public Guardian fee schedule. Authorizing periodic payments according to the existing fee schedule will not only ensure that conservatorship fees are paid only when the conservatorship estate can afford such payment, it will also create less of a burden on the smaller conservatorship estates, which can ill afford a large annual lump sum payment. The Conservator would make the periodic fee payment from the Conservatee's estate at the end of each month, after all monthly expenses have been paid. However, Petitioner will neither request nor pay fees on those accounts which contain less than $200.00 after monthly living expenses have been paid." The petition clarified that fee payments would not be made during the period of temporary conservatorship.

The petition's prayer for relief requested, in relevant part:

"1.     Petitioner be appointed Temporary Conservator of the Person and estate of the proposed Conservatee with the power to authorize psychiatric treatment and to detain the proposed Conservatee in a facility providing intensive treatment pending final determination by the Court of this Conservatorship proceeding.

"2.     The Kern County Public Conservator or some other suitable person be appointed Conservator of the Person and Estate of the proposed Conservatee. [¶] … [¶]

"[3].   The Conservator be given the following powers:

    "(a)     The Conservator shall have the power to detain the Conservatee in the intensive treatment facility or to place the Conservatee for treatment in one of the facilities set out in Welfare and Institutions Code Section 5358.

    "(b)     The Conservator shall have the power and authority to conserve and protect the property of the Conservatee from loss or injury.

3.

"(c)    The Conservator shall have the right to require the Conservatee to receive treatment related specifically to remedying or preventing the recurrence of Conservatee being gravely disabled.

"(d)    The Conservator shall have the right to authorize routine medical treatment for the Conservatee.

"[4.]    The Court make an Order authorizing Petitioner, as Conservator, to make periodic payments on account to the Public Conservator based on the existing Public Guardian/Conservator Fee Schedule ….  The payments made pursuant to this order will be subject to review and approval by the court upon the next succeeding account of the Conservator, pursuant to Probate Code section 2643, subdivision (c).  This shall not apply during the period of Temporary Conservatorship."

Multiple documentary exhibits regarding R.J., including psychiatric records, were attached to the petition.

That same day, that is, April 15, 2024, the court entered an order appointing the public conservator as temporary conservator of the person and estate of R.J. and directing that temporary letters of conservatorship be issued.  The court's order provided:  "The Petition of the Kern County Public Conservator for appointment as Temporary Conservator of the Person and Estate of [R.J.] was presented to this Court.  After examining the Petition, the Court finds that the facts alleged in the Petition are true, that the appointment of a Temporary Conservator of the Person and Estate is necessary pending the final determination on the Petition for Appointment of a Permanent Conservator, because the proposed Conservatee is gravely disabled as a result of a mental disorder, and that no alternative to Conservatorship is available."

The court's order added:  "The Temporary Conservator shall have the power to detain the Conservatee in an intensive treatment facility or to place the Conservatee for treatment in one of the facilities set out in Welfare and Institutions Code § 5358."  The court's order further stated:  "The Temporary Conservator shall have the power and authority to conserve and protect the property of the Conservatee from loss or injury."

Subsequently, on May 10, 2024, the Kern County Public Conservator filed a conservatorship investigation report in R.J.'s matter.  The report detailed R.J.'s mental

4.

health condition and inability to care for himself, among other things. The report noted: "[R.J.] is suffering from a mental disorder which has rendered him gravely disabled and warrants the establishment of a conservatorship on his behalf. [R.J.] is not able to formulate a realistic plan to provide food, clothing, or shelter, and will not accept third-party assistance to meet these needs." The report also documented, as to R.J.'s financial resources, that he "receives Social Security Income," his "current payee is his mother," and "[t]here are no known assets in [his] name at this time."

The conservatorship investigation report recommended: "It is respectfully recommended that the Kern County Public Conservator, who testifies that the Kern County Public Conservator is able and willing to serve as Conservator, be appointed the Conservator of the Person and Estate of [R.J.]. Powers of the conservator should include: To place the Conservatee in a medical, psychiatric, nursing, or other state licensed facility, or a state hospital [or] county hospital .… The proposed Conservator should also have the power to exercise control of [R.J.'s] estate as deemed necessary."

The court appointed counsel for R.J. R.J. requested a jury trial on the petition; specifically, on the issue of whether he was gravely disabled. A jury trial was set for September 3, 2024.

The public conservator filed a trial brief. The trial brief stated:

"Parties ask the jury to determine whether [R.J.] is gravely disabled. 'Gravely disabled' means (1) that a person is unable to provide for his or her basic needs for food, clothing, or shelter because of a mental disorder; or (2) that person will not take his medication unless required to do so and that a mental disorder makes him unable to provide for his basic personal needs for food, clothing, or shelter without such medication. A person is not 'gravely disabled' if that person can survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for the person's basic personal needs for food, clothing, or shelter. However, unless the responsible family, friends, or others indicate in writing their willingness and ability to help, they shall not be considered willing or able to provide this help. Even if the help is offered and accepted, the person must be able to survive safely with that help.

"If there is a finding by the jury that [R.J.] is gravely disabled, the Court may order the conservatorship of his person and estate. [R.J.] denies these claims and denies that he is gravely disabled.

"By law, the jury only determines whether [R.J.] is 'gravely disabled.' The Judge in this Court decides all other issues relating to the conservatorship."

Trial began on September 3, 2024, with empanelment of a jury. The evidentiary phase of the trial took place on September 4-5, 2024. Petitioner, the Kern County Public Conservator, called three witnesses: Dr. Dwight Norman, Jr. (clinical psychologist at Kern Behavioral Health Recovery Services), Dr. Jagdeep Garewal (medical director and psychiatrist at Crestwood Behavioral Health), and Whitney Munoz (deputy public conservator).

Dr. Norman testified that he had evaluated R.J. for purposes of trial. Dr. Norman noted that R.J. was housed at a "locked skilled nursing facility" called Crestwood. Dr. Norman stated that R.J. suffered from schizophrenia; R.J. was first diagnosed with schizophrenia at the age of 17. Dr. Norman observed that R.J. was "stabilizing on his medication," at Crestwood, but was not able to look after his basic needs at present or voluntarily and independently manage his treatment. Dr. Norman opined R.J. was gravely disabled on account of his mental illness. Dr. Norman recommended that R.J. be placed under conservatorship.

Dr. Jagdeep Garewal had treated R.J. various times at Crestwood. Dr. Garewal testified he had diagnosed R.J. with schizoaffective disorder bipolar type in partial remission. Schizoaffective disorder bipolar type has "schizophrenia like symptoms and mood disorder symptoms." The symptoms of this mental illness can be controlled and managed through medication; therapy or counseling alone are not enough. R.J. was on medication and was functional in some ways and dysfunctional in others. Without medication, he would decompensate. However, R.J. did not want to take his medication and had refused it many times. His conservator had him placed on long-acting injectable medications, which was "a positive outcome." R.J. was gravely disabled on account of

6.

his mental illness; in the absence of a conservatorship, he would be unable to provide for his food, clothing, and shelter. Dr. Garewal recommended a conservatorship for R.J.

Whitney Munoz served as a conservator for R.J. R.J. was under a Lanterman-Petris-Short (LPS) conservatorship. (See Lanterman-Petris-Short Act, Welf. & Inst. Code, § 5000 et seq.) Munoz testified: "I would be the primary decision-maker for his food, clothing, shelter, mental health treatment, and/or approval or denial of certain medications depending on what the doctor is prescribing." Asked about the length of a conservatorship, Munoz responded: "So we can range from conservatorship from 30 days up to a year. And then depending on if they're still considered gravely disabled or meeting criteria, we can extend for another year. But, of course, we can drop the conservatorship at some point if they are no longer gravely disabled." She added: "We have clients that are long-term, that never get off the conservatorship. But our conservatorship is meant to be temporary. It is not meant to be long-term. We get them into mental health treatment, and then we drop the conservatorship and hope they succeed in the community." R.J. had been under conservatorship in Kern County four separate times between 2005 and 2024.

Munoz testified that at the present time, "[R.J.] requires a higher level of care. He needs … maximum prompting for ADLs, which is activities of daily living, and for his medications." Munoz recommended a conservatorship for R.J. for the time being. Munoz stated that R.J. presently received Social Security income of approximately $900 per month (R.J.'s mother was his payee); should a conservatorship be approved for R.J., Munoz would become his payee. Munoz noted that given R.J.'s trajectory, after some time he would be eligible for a less strict placement (namely, enhanced board and care) than his current locked placement. In an enhanced board and care placement, R.J.'s Social Security payment would increase to $1,500 monthly.

As for R.J.'s case, he testified on his own behalf and called his mother as an additional witness.

When the evidentiary phase of trial wrapped up on September 5, 2024, the jury that same day reached a verdict that R.J. was "gravely disabled due to a mental disorder." After the jury delivered its verdict, the court stated from the bench: "After examining the petition, hearing the evidence submitted in support of the petition, including expert opinion and the findings of the jury in this matter, the Court makes the following findings." Among other things, the court found that "[t]he conservateee lacks the capacity to give informed consent to treatment related specifically to the conservatee being gravely disabled." The court further found: "Authorization [of] periodic payments or compensation to the Public Conservator Public Guardian based on the fee schedule adopted by the Kern County Superior Court for public conservator, public guardian services is just and reasonable."

The court concluded: "Therefore, it is ordered that the Kern County Public Conservator, Public Guardian is appointed conservator of the person and estate of [R.J.] and letters of conservatorship shall be issued accordingly." The court added: "The conservatorship is established pursuant to Welfare and Institutions Code section 5350 et [seq] and will terminate on September 3rd, 2025." The court asked counsel, "Anything further as to this matter?" R.J.'s counsel responded, "No, Your Honor."

Subsequently, the court issued a minute order and a written order appointing the Kern County Public Conservator as conservator of the person and estate of R.J. The minute order reflected the following findings and orders: "The court finds the proposed conservatee is gravely disabled as defined in section 5008(H) of the Welfare and Institutions Code"; "The court finds the least restrictive most appropriate placement for the conservatee is a skilled nursing facility"; "*Fees granted as prayed*"; "Conservatorship is established, pursuant to [Welfare and Institutions Code section] 5350, et seq. and terminates on 09/[03]/2025." (Some capitalization omitted, italics added.)

8.

As for the court's written order (entered on September 5, 2024, and amended on January 7, 2025), it mirrored in substance the court's oral order from the bench and its minute order. The written order provided, in pertinent part:

"THEREFORE, IT IS ORDERED:

"1.    The Kern County Public Conservator/Public Guardian is appointed Conservator of the Person and Estate of [R.J.] and Letters of Conservatorship shall be issued accordingly. No bond is required.

"2.    The Conservatorship is established pursuant to Welfare and Institutions Code Sections 5350 et seq. and will terminate on September 3, 2025. [¶] … [¶]

"[3.]   The Conservator shall have the right to require the Conservatee to receive treatment related specifically to remedying or preventing the recurrence of the Conservatee being gravely disabled.

"[4.]   The Conservator shall have the power and authority to conserve and protect the property of the Conservatee from loss or injury. [¶] … [¶]

"[5.]   Petitioner, as Conservator, is authorized to make periodic payments on account to the Public Conservator/Public Guardian based on the existing Public Guardian/Conservator Fee Schedule or based upon any fee schedule subsequently adopted by the Kern County Superior Court for Public Conservator/Public Guardian services. *The payments made pursuant to this order will be subject to review and approval by the court upon the next succeeding account of the Conservator, pursuant to Probate Code § 2643, subdivision (c).*" (Italics added.)

Thereafter, on February 18, 2025, the parties filed a stipulation terminating the conservatorship. The stipulation stated: "It is hereby stipulated by and between the parties that the Conservatorship of the Person and Estate in the above-referenced matter be *terminated* as of the signing of this order. *Further, the parties stipulate that a final accounting in this matter be set on the MH Calendar for May 14, 2025, at 1:00 PM …* The conservatee is no longer gravely disabled as he has a valid offer of third-party assistance from his uncle. All prior letters and orders are to be terminated as of the signing of this order." (Some capitalization omitted, italics added.)

9.

The same day, the court entered the following order: "IT IS ORDERED that the conservatorship of the person and the estate in the above referenced case be terminated as of the signing of this order. A final accounting is set in this matter for May 14, 2025, at 1:00 PM … on the MH calendar. All prior letters and orders are to be terminated as of the signing of this order."

## DISCUSSION

I.     **R.J.'s Challenges to the Periodic Payments Authorization Contained in the Court's Post-Trial Order are Forfeited on Appeal**

A.     *Background*

R.J. challenges, for the first time on appeal, a provision of the trial court's post-trial order that authorized the Kern County Public Conservator to periodically collect payments—in accordance with a fee schedule adopted by the Kern County Superior Court—from R.J.'s estate, subject to court approval at a subsequent accounting proceeding. The challenged provision of the court's order provides: "Petitioner, as Conservator, is authorized to make periodic payments on account to the Public Conservator/Public Guardian based on the existing Public Guardian/Conservator Fee Schedule or based upon any fee schedule subsequently adopted by the Kern County Superior Court for Public Conservator/Public Guardian services. *The payments made pursuant to this order will be subject to review and approval by the court upon the next succeeding account of the Conservator, pursuant to Probate Code § 2643, subdivision (c).*"[1] (Italics added.)

The challenged provision in the court's order relates to a request for authorization of periodic payments that was included in the Kern County Public Conservator's April 15, 2024 petition for conservatorship that initiated the instant matter. As noted

---

[1] In addition, the court's order provided: "The Conservator shall have the power and authority to conserve and protect the property of the Conservatee from loss or injury."

10.

above, the request for authorization of periodic payments stated: "[I]t would be in the best interests of the proposed Conservatee, and therefore Petitioner requests authority to make periodic payments from the conservatorship estate for compensation for services of the Public Conservator [p]ursuant to Probate Code section 2643, based on the current Public Conservator/Public Guardian fee schedule. Authorizing periodic payments according to the existing fee schedule will not only ensure that conservatorship fees are paid only when the conservatorship estate can afford such payment, it will also create less of a burden on the smaller conservatorship estates, which can ill afford a large annual lump sum payment. The Conservator would make the periodic fee payment from the Conservatee's estate at the end of each month, after all monthly expenses have been paid. However, Petitioner will neither request nor pay fees on those accounts which contain less than $200.00 after monthly living expenses have been paid."

The Kern County Superior Court fee schedule, as referenced and incorporated into the court's post-trial order authorizing periodic payments, lists monthly fees and total annual fees owed to the office of the public conservator for its services, based on the value of the conservatee's estate. As relevant here, for estates with a cash balance between $201 and $1,999,[2] an annual fee of $444 applies, which breaks down into 12 monthly installments of $37 each. R.J. was under conservatorship from September 5, 2024 to February 18, 2025, a period of approximately five months. The fee amount in dispute would therefore appear to be around $185.[3]

---

[2] The Conservatorship Investigation Report filed in the trial court indicated R.J. received Social Security income, and testimony presented at trial clarified R.J. received Social Security income in the amount of $900 monthly.

[3] The Kern County Superior Court's fee schedule with regard to public conservator services further states: "Fees for Kern County Counsel services are billed to the Conservator, and *the Conservator pays these fees* on a monthly basis. The actual amount paid by Petitioner [i.e., the Conservator] to Kern County Counsel for attorney services will be presented in annual accounting petitions, and the Conservator will seek reimbursement from the Conservatee's estate for the amount paid for its attorney

11.

According to R.J.'s brief, "[o]rders for compensation for services by the Public Guardian are governed by Probate Code section 2942, subdivision (b)." Probate Code section 2942, subdivision (b), provides:

> "[The public guardian shall be paid from the estate of the conservatee as follows:] Compensation for services of the public guardian and the attorney of the public guardian, and for the filing and processing services of the county clerk or the clerk of the superior court, in the amount the court determines is just and reasonable. In determining what constitutes just and reasonable compensation, the court shall, among other factors, take into consideration the actual costs of the services provided, the amount of the estate involved, the special value of services provided in relation to the estate, and whether the compensation requested might impose an economic hardship on the estate. Nothing in this section shall require a public guardian to base a request for compensation upon an hourly rate of service."

As noted, the record indicates the Kern County Superior Court has adopted a graduated fee schedule for the services of the public conservator/public guardian. It appears the graduated fee schedule takes into the account the factors set forth in Probate Code section 2942, subdivision (b), in an effort to create a standardized fee authorization process, subject to subsequent court approval in each individual case (see below).

R.J.'s brief further notes that Probate Code section 2643, subdivision (c) "governs periodic payments to be made to the conservator or the guardian," and that the trial court's post-trial order noted that any periodic payments "be made pursuant to Probate Code section 2643, subdivision (c)." Probate Code section 2643, subdivision (a)

services." The instant appeal does not implicate any issue as to reimbursement, from R.J.'s estate, of any fees charged to the Conservator by Kern County Counsel.

The fee schedule further provides: "At the time of the first annual accounting, the filing fees for the Public Guardian's Initial Petition for Temporary Probate Conservatorship and the filing fees for the Public Guardian's initial Petition for Probate Conservatorship shall be paid by the Public Guardian to the Superior Court, if the balance of cash in the conservatorship estate within possession and control of the Public Guardian exceeds $2,000." The instant appeal does not implicate any issue as to reimbursement, from R.J;'s estate, of any filing fees related to filings made by the public conservator in this matter.

provides: "[O]n petition by the guardian or conservator of the person or estate, or both, the court may by order authorize periodic payments on account to [a conservator of the person and of the estate] for the services rendered by [the conservator] during the period covered by each payment."

In addition, Probate Code section 2643, subdivision (c) provides:

> "The petition [by the conservator] shall describe the services to be rendered on a periodic basis and the reason why authority to make periodic payments is requested. In fixing the amount of the periodic payment, the court shall take into account *the services to be rendered* on a periodic basis and the reasonable value of those services. The guardian or conservator of the estate may make the periodic payments authorized by the order only if the services described in the petition are actually rendered. *The payments made pursuant to the order are subject to review by the court upon the next succeeding account of the guardian or conservator of the estate to determine that the services were actually rendered and that the amount paid on account was not unreasonable*, and the court shall make an appropriate order if the court determines that the amount paint on account was either excessive or inadequate in view of the services actually rendered." (Italics added.)

Probate Code section 2643, subdivision (c), by its own terms, permits the court to *prospectively* authorize periodic payments to be made for services rendered by the public conservator, subject to *subsequent* court approval.

Here, the trial court authorized periodic payments in accordance with the graduated fee schedule for the services of the public conservator adopted by the Kern County Superior Court. The fee schedule appears to reflect the typical services offered by the public conservator and the reasonable value of those services, as required by Probate Code section 2643, subdivision (c). The court's order further noted that any periodic payments made to the public conservator from R.J.'s estate would be subject to court approval at a subsequent accounting proceeding, as required by Probate Code section 2643, subdivision (c).[4]

---

[4] To the extent R.J.'s brief references Probate Code section 2643.1, that statute does not appear to be relevant here as it applies only to "professional fiduciaries licensed

13.

### B.    *Analysis*

R.J. argues that the trial court's order, insofar as it authorized periodic payments to the public conservator from his estate, did not comply with the requirements of Probate Code sections 2942 and 2643, subdivision (c).  R.J.'s arguments are not clearly delineated and are confusing.  The gist of his arguments appears to be that, under Probate Code sections 2942 and 2643, subdivision (c), the court's reliance on the standard, graduated fee schedule for the public conservator's services adopted by the Kern County Superior court, was error.  He appears to suggest that these statutory provisions require the court to make individualized findings in each conservatorship case before authorizing any fee payments and that authorization of *prospective*, periodic fee payments is barred.  R.J. merely cites one case in support of his arguments, *Conservatorship of A.B.* (2021) 66 Cal.App.5th 384.  However, this case concerns errors committed by the trial court at an accounting proceeding and is not apposite here.

The public conservator responds:  "Appellant forfeited any challenges to the trial court's findings and orders made regarding the fee schedule when imposing the conservatorship.  No objections were made and no issues were raised about the fee schedule in the trial court.  Rather, Appellant seeks to raise these issues for the first time on appeal.  Accordingly, those issues should be deemed forfeited or waived.  Failure to object … [in] the trial court waives the right to claim error as grounds for reversal on appeal."

We agree with the public conservator.  The public conservator's request for periodic payments consistent with the fee schedule was stated clearly in the public conservator's original petition and its prayer for relief therein.  Indeed, the minute order documenting the trial court's post-trial order noted that "[f]ees were granted as prayed."

_____

under the Professional Fiduciaries Act."  (Witkin Summary of California Law, § 1137 (11th Ed.).)

14.

However, at no point did R.J. object on any basis to the public conservator's request or to the court's order granting the request.

Appellate courts ordinarily do not consider claims of error where an objection could have been, but was not, made in some appropriate form at trial. It is usually unfair to the trial court and the adverse party to take advantage of an ostensible error on appeal that could have been addressed and resolved at the trial level and a proper record made for purposes of review. (*People v. Saunders* (1993) 5 Cal.4th 580, 590; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.) Accordingly, we conclude R.J.'s challenges to the trial court's order, inasmuch as it granted the public conservator's request for periodic payments under certain conditions and subject to subsequent court approval, are forfeited for purposes of appeal.[5]

We note that while this appeal was pending, the parties stipulated that the conservatorship would terminate as of February 18, 2025, and that a final accounting proceeding would take place before the trial court on May 14, 2025. R.J. therefore had an opportunity to raise directly with the trial court, putative complaints as to any compensation actually collected or requested by the public conservator.

---

[5] R.J. suggests in passing, in his opening brief, that the court's order as to fees and compensation was not supported by substantial evidence. However, this argument is not adequately developed in the opening brief and is therefore not cognizable. (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 [when an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary]; *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817 [points asserted on appeal but not supported by "adequate factual or legal analysis" are forfeited]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd*. (2002) 100 Cal.App.4th 1066, 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review."].)

15.

**II.     R.J. Has Not Shown That Trial Counsel Was Ineffective in Failing to Object to the Trial Court's Order Authorizing Periodic Payments**

R.J. further argues that, to the extent his challenges to the trial court's order regarding periodic payments are forfeited on appeal, his trial counsel rendered ineffective assistance in not objecting on these grounds below.  We reject this contention.

"[U]nder the LPS Act, a proposed conservatee has a statutory right to effective assistance of counsel.  ([Welf. & Inst. Code,] § 5365.)  [Welfare and Institutions Code] [s]ection 5365 provides in pertinent part:  'The court shall appoint the public defender or other attorney for the … proposed conservatee within five days after the date of the petition.'  The duty of counsel to perform in an effective and professional manner is implicit in [Welfare and Institutions Code] [s]ection 5365."  (*Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710 (*David L.*).)  The *David L.* court further concluded that "under the LPS ACT a [conservatee's] statutory right to effective assistance of counsel" is constitutionally protected.  (*Ibid*.)

A person claiming ineffective assistance of counsel " 'must satisfy a two-pronged showing:  that counsel's performance was deficient, and that the [client] was prejudiced[.]' "  (*People v. Woodruff* (2018) 5 Cal.5th 697, 736 (*Woodruff*).)  "If [the client] has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient."  (*People v. Sapp* (2003) 31 Cal.4th 240, 263.)  "Rarely is ineffective assistance of counsel established on appeal since the record usually sheds no light on counsel's reasons for action or inaction."  (*Woodruff*, *supra*, at p. 736.)

Here, counsel may not have objected to the court's compensation order for many reasons.  R.J. had been under conservatorship before and counsel may have known he would not be charged any fees in light of the value of his estate.  Alternatively, counsel could have determined the option of periodic payments was preferable to a potential lump sum charge at the end of the conservatorship.  Counsel could also legitimately have opted for contesting any potential charges at a *later* accounting proceeding rather than having

16.

R.J.'s estate scrutinized *upfront*. Indeed, while this appeal was pending, the parties stipulated to terminating the conservatorship and to setting a final accounting proceeding before the trial court. R.J. was free to challenge any charges or fee payments at the final accounting proceeding. Given the circumstances, R.J. has not shown that counsel's performance was deficient, nor has he shown that the alleged deficiency was prejudicial. (See, e.g., *Kimmelman v. Morrison* (1986) 477 U.S. 365, 381 [courts apply a strong presumption that counsel's conduct was within the " 'wide range' " of reasonable professional assistance]; *People v. Torrez* (1985) 31 Cal.App.4th 1084, 1091 [counsel is "not required to make futile motions or indulge in idle acts to appear competent"].) Accordingly, R.J.'s claim of ineffective assistance of counsel fails.

### DISPOSITION

The post-trial order is affirmed. Each side to bear its own costs on appeal.

FAIN, J.*

WE CONCUR:


HILL, P. J.


MEEHAN, J.

---

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17.